UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANGELA G. WOLFE,

      Plaintiff,

 v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security, [1]

      Defendant.

Case No. 3:12-cv-05813-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

  Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below defendant's decision to deny benefits should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

  On September 5, 2007, plaintiff filed an application for disability insurance benefits, alleging disability as of October 1, 2005, due to post traumatic stress disorder, major depression, lumbar stenosis, degenerative disc disease, panic attacks, a heart condition, and a neck injury. See ECF#10, Administrative Record ("AR") 20, 198. That application was denied upon initial

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**

ORDER - 1

administrative review on June 17, 2008, and on reconsideration on November 3, 2008. See AR 20.  A hearing was held before an administrative law judge ("ALJ") on March 23, 2010, at which plaintiff, represented by counsel, appeared and testified. See AR 52-86.

In a decision dated April 29, 2010, the ALJ determined plaintiff to be not disabled. See AR 20-44.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 13, 2012, making the ALJ's decision the final decision of the Commissioner. See AR 1; see also 20 C.F.R. § 404.981.  On September 18, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on December 26, 2012. See ECF #10.  The parties have completed their briefing and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings, because the ALJ erred (1) in evaluating the opinions of William J. Chalstrom, Ph.D., and Norma L. Brown, Ph.D.; (2) in failing to accommodate the limitations found by Dr. Chalstrom and Dr. Brown in assessing plaintiff's residual functional capacity; and (3) in determining her available occupational base.  For the reasons set forth below, however, the Court disagrees that the ALJ erred as argued here and thus that he erred in determining plaintiff to be not disabled.  Accordingly, the Court finds that defendant's decision to deny benefits should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security

ORDER - 2

Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.  The ALJ's Evaluation of the Opinions of Dr. Chalstrom and Dr. Brown

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

ORDER - 4

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

    A.    Dr. Chalstrom

The record contains an evaluation report completed by Dr. Chalstrom in late May 2008, in which he provided the following medical source statement:

> The claimant is a 39-year-old female who alleges problems with stress.  She has been in treatment on and off for anxiety, but stopped taking her last psychotropic medication six months ago.  The mental status examination indicates that her memory, concentration, and pace are within normal limits.  She is capable of understanding and remembering short, simple instructions and even more complex ones.  She does not socialize much now except for family members.  She has had a long history of holding jobs for only a short period of time, so there are indications that she does have problems with supervisors and co-workers.  That was evidently the situation in her last job, which lasted only a week.

AR 617.  The ALJ stated that he was "credit[ing] Dr. Chalstrom's opinion generally, but there are no real indications other than [plaintiff's] own remarks that [she] would have more than mild social limitations." AR 37.  The ALJ also discounted Dr. Chalstrom's opinion on the basis that the record was "significant for the fact that [plaintiff] worked with no significant change in either her mental or physical conditions to indicate why she cannot continue to do so." Id.

ORDER - 5

Plaintiff argues the first reason the ALJ gave for discounting Dr. Chalstrom's opinion is not legitimate, because Dr. Chalstrom "never expressed doubts regarding [her] complaints and he based his opinions on his own observations, such as [her] continued anxiety relating to work situations and his review of [her] history of short-term jobs." ECF #14, p. 8.  The Ninth Circuit has stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  In Ryan, however, there was "nothing in the record to suggest" the examining physician relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical observations." Id. at 1200.

In this case, though, as noted by the ALJ Dr. Chalstrom's own mental status examination results fail to indicate the presence of any significant mental functional limitations. See AR 26, 34, 37, 615-16.  Nor does Dr. Charlstrom's evaluation report suggest any such limitations, as also noted by the ALJ, other than those based on plaintiff's own self-reporting, including the work history she related. See 37, 613-17.  Given that the ALJ found plaintiff to be less than fully credible concerning her subjective complaints and allegations of disability (see AR 31-38) – and that plaintiff has not specifically challenged the ALJ's adverse credibility determination – the ALJ did not err in discounting Dr. Chalstrom's opinion on this basis. See Morgan, 169 F.3d at 601 (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted); Tonapetyan, 242 F.3d at 1149.

Plaintiff further argues her work history is consistent with Dr. Chalstrom's opinion, as it

ORDER - 6

reveals that she has not held any one job for longer than three years.  Plaintiff also points to her testimony regarding the difficulties she had getting along with others while at work.  But the record shows plaintiff had significant earnings for much her work history.  See AR 169.  Further, plaintiff testified that she was never fired or let go from a job, except in relation to time she took off due to her physical problems.  See AR 56, 75-76.  While plaintiff appears to have left one job because she felt bad for taking too much time off due to being depressed, she gave no indication that she left it due to problems with those she worked with, and another job she left it seems had more due to her employer lying to her.  See AR 77-78.  The ALJ, therefore, did not err in finding Dr. Chalstrom's opinion less credible on this basis, even if there is some ambiguity in the record as to the specific reasons plaintiff's past jobs ended.  See Sample, 694 F.2d at 642; Allen, 749 F.2d at 579; Reddick, 157 F.3d at 722; Morgan, 169 F.3d at 601.

      Lastly, plaintiff argues the ALJ's rejection of Dr. Chalstrom's opinion was improper due to its consistency with the observations of Elevan Vexler, LICSW, who noted plaintiff reported erratic behavior patterns resulting in relationship problems, and who opined in relevant part that:

> . . . She has insight to why she behaves the way she does, but does not yet have the skills to truly change her behavior patterns for a significant period of time.
>
> . . .
>
> With these stated behaviors it is difficult to recommend [she] re-enter the work force at this time.  She does not have the coping skills to handle stress well.  She struggles with her ability to handle conflicts with others in a healthy or non-abrasive manner.  Nor does she have the history to show that she is reliable or able to attend work on a routine basis.

AR 848.  Clearly, though, Ms. Vexler has relied to a large extent on what plaintiff reported to her regarding her work history and behavior patterns in forming her opinions, as did Dr. Chalstrom discussed above.  As also discussed above, plaintiff's work history shows an ability to work that

ORDER - 7

is at odds with the disabling social functional limitations indicated by Ms. Vexler. Even if these are not valid reasons for rejecting *Ms. Vexler's* opinions, as once more discussed above the ALJ provided other, valid independent reasons for rejecting those of Dr. Chalstrom. Finally, because Ms. Vexler is not an "acceptable medical source," her opinions would likely not cause the ALJ to change his analysis here given that the record contains other opinion evidence from such sources that supports that analysis. See AR 38, 541-557, 625-37, 700-712.[3]

     B.     Dr. Brown

In late October 2008, plaintiff was evaluated by Dr. Brown, who opined that plaintiff did "not appear able to maintain employment at the present time." AR 698. The ALJ stated he gave Dr. Brown's opinion "no weight," because it was "not supported by her own objective findings, which showed no cognitive impairment and only mild social impairment," and because it was "inconsistent with Dr. Brown's observations that [plaintiff] might be malingering and may have exaggerated her level of disturbance." AR 38. Plaintiff again relies on her reported work history to argue Dr. Brown's opinion is consistent with the record, an argument the Court previously has rejected in regard to the ALJ's treatment of Dr. Chalstrom's opinion. The same is true in regard to plaintiff's reliance here as well on Ms. Vexler's opinions. In addition, as pointed out by the ALJ Dr. Brown's evaluation report is essentially devoid of corroborative objective findings and further contains evidence of symptom exaggeration on plaintiff's part at the time. See AR 683-91, 693-99; see also AR 683-91; Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings). Here too, therefore, the ALJ did not err in rejecting Dr. Brown's opinion.

---

[3] Licensed or certified psychologists are acceptable medical sources, and as such their opinions may be given more weight than those provided by sources who are not acceptable medical sources. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d).

ORDER - 8

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found in relevant part that:

> **. . . [T]he claimant has the residual functional capacity to perform sedentary work . . . She can lift and/or carry 10 pounds occasionally and 5 pounds frequently. She can stand and/or walk with normal breaks for a total of about two hours in an eight hour workday. She can sit with normal breaks for a total of about six hours in an eight hour workday. The claimant can frequently balance. She can occasionally stoop, kneel,**

ORDER - 9

> **crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She should avoid concentrated exposure to vibration and hazards (machinery, heights, etc.). The claimant is limited to simple and detailed tasks, and can manage the superficial interaction required of everyday life.**

AR 29-30 (emphasis in original) (internal footnote omitted). Plaintiff argues the ALJ did not accommodate the moderate limitation in her ability to relate appropriately to co-workers and supervisors or the marked limitation in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting assessed by Dr. Brown, as well as Dr. Brown's overall conclusion that she could not work. See AR 685, 698. But as discussed above, the ALJ did not err in discounting the medical opinion evidence from Dr. Brown. Accordingly, the ALJ was not required to adopt those findings of Dr. Brown that indicated greater restriction in mental functioning than found by the ALJ, and thus the ALJ did not err excluding them from the RFC assessment. The same is true in regard to the "problems" Dr. Chalstrom found plaintiff would have with co-workers and supervisors. AR 617.

III.  The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five thereof the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

The Grids may be used by the ALJ, however, only if they "*completely and accurately represent a claimant's limitations.*" Tackett, 180 F.3d at 1101 (emphasis in original). That is, the

ORDER - 10

claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original).  If the claimant "has significant non-exertional impairments," then reliance on the Grids is not appropriate.[9] Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

In this case, the ALJ relied on the Grids to find plaintiff not disabled at step five. See AR 40-43.  Plaintiff argues the ALJ should have obtained the testimony of a vocational expert here in light of the mental functional limitations assessed by Drs. Charlstrom and Brown.  But again for the reasons discussed above, the ALJ did not err in discounting both of their opinions, and as such this is not a valid basis for asserting reversible error at this step.  Accordingly, the ALJ also did not err in finding plaintiff to be not disabled based on the Grids.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 16th day of September, 2013.

Karen L. Strombom
United States Magistrate Judge

---

[9] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

ORDER - 11